20735

The STATE, Respondent, v. Randall HUIETT, Appellant.

(246 S. E. (2d) 862)

*John D. Delgado,* Columbia, *for appellant.*

*Atty. Gen. Daniel R. McLeod, Asst. Atty. Gen. Brian P. Gibbes,* and *Sol. James C. Anders,* Columbia, *for respondent.*

August 9, 1978.

GREGORY, Justice:

Appellant Randall Huiett was convicted of murder and sentenced to life imprisonment. The only issue on appeal is whether the trial judge erred by instructing the jury, over appellant's objections, as to the possibility that appellant would be released from custody if the jury returned a verdict of not guilty by reason of insanity. We reverse.

It is undisputed that on the afternoon of October 28, 1976, appellant approached the loading platform of the Coburg Dairy in Columbia, South Carolina, stepped into the back of a milk truck that was being washed out by Milo C. Lucas, and struck Mr. Lucas in the head with an ax, killing him.

The brutal attack took place in front of an eye witness who knew appellant personally. No explanation was ever given for the slaying.

Appellant's only defense was insanity.

The case was first tried on May 4 and 5, 1977. A mistrial was declared when the jury was unable to reach a verdict after seven hours of deliberations.

The case was again tried on May 11 and 12, 1977 with the same judge presiding. Essentially the same evidence was introduced. Unlike the first trial, however, at this trial the judge instructed the jury that if a verdict of not guilty by reason of insanity was returned appellant would be transferred to the State Hospital for observation. The jury was further instructed that if appellant was then or subsequently found not to be mentally ill, he would be released. The jury deliberated thirteen minutes and returned a verdict of guilty.

On appeal appellant contends the trial judge committed reversible error by giving the following commitment charge:

[I]f you find from the evidence, ladies and gentlemen, that the Defendant should be acquitted upon his plea of insanity then the form of your verdict should be not guilty by reason of insanity. And I instruct you ladies and gentlemen that Code Section 32-980 of our Code of Laws [Section 44-23-610, 1976 Code] provides if a Jury acquits a person on the ground that he was not responsible for his conduct because of insanity but the Court believes the person requires hospitalization it shall order the prosecuting attorney to initiate judicial admission proceedings pursuant to the law. If such proceedings are not initiated within fifteen days from the date of the order, the Defendant shall be released. The Court may order such person hospitalized pending the outcome of such proceedings if such person is found not to require hospitalization, the Court shall order his release. If the prosecuting attorney does initiate judicial admission proceedings in the Probate Court, but the Probate Court Judge or any

one of the designated examiners is of the opinion that the Defendant is not mentally ill at the time of the examination or hearing *then the Defendant shall be set free, in other words, released from custody.* In the event that the Defendant is committed to the State Hospital, the Defendant shall, as frequently as practicable but not less than once during the first six months of confinement and annually thereafter be examined, and whenever it is determined that the conditions that justify involuntary confinement no longer exist, a report shall be made immediately to the Department of Mental Health and *the department shall discharge the Defendant, i. e., release the Defendant from custody.* I further charge you that the disposition and the handling of the Defendant, should you find him not guilty by reason of insanity, shall not enter into your deliberations because what becomes of an accused person after conviction or acquittal is of no concern to the Jury. (Emphasis added.)

The basis of appellant's objection to this portion of the trial judge's jury charge is his contention that the "danger extant in a commitment instruction, and the prejudice to Randy Huiett which resulted, was that the jury may have failed to return a not guilty by reason of insanity verdict because it could result in freeing the defendant in a short time and thereby put a dangerous individual back in society." [App. Br. p. 6] Appellant contends these instructions were irrelevant to the issue of his guilt or innocence, and the trial court erred by giving the instructions over appellant's objections.

The function of the jury is to determine whether a defendant is guilty or not guilty. Ordinarily the jury is not concerned with the punishment fixed by law, nor with the discretion of the court in deciding upon the sentence. *State v. Pulley,* 216 S. C. 552, 59 S. E. (2d) 155 (1950). In *State v. McGee,* 268 S. C. 618, 235 S. E. (2d) 715 (1977) we stated:

As a general rule, where the right to fix the punishment is exclusively within the province of the court, it is not error

to refuse an instruction with regard to punishment, since information as to the penalty is of no aid to the jury in determining whether the defendant committed the crime charged. However, where the right to fix the punishment or make a recommendation with regard to punishment rests with the jury, it is error for the court to refuse to instruct the jury in that respect. 40 Am. Jur. (2d), Homicide, Section 513; 23A C.J.S. Criminal Law §§ 1290b, 1291. 235 S. E. (2d) at 716.

While the commitment of a defendant as the result of a verdict of not guilty by reason of insanity is not considered "punishment" in the usually accepted meaning of the word, the rule that the jury ordinarily is not concerned with punishment generally is held applicable by the majority of courts in other states to the procedure followed with respect to a defendant acquitted for insanity. See 11 A. L. R. (3d) 737. We agree with this rule.

In *State v. Valenti*, 265 S. C. 380, 218 S. E. (2d) 726 (1975) we held the lower court did not err by refusing a criminal defendant's request for a commitment charge. This holding reflects the majority rule that ordinarily what becomes of an accused upon either conviction or acquittal is of no concern to the jury. Here, the State requested a commitment charge and over appellant's objections that charge was given. We cannot sanction giving to the State that which is denied to a criminal defendant under similar circumstances.

We are of the view that unless the commitment charge is curative under the circumstances of a particular trial or is required to clarify a misstatement of the law and can be given without legal prejudice to either appellant or the State, the rule that the jury is not concerned with the disposition of the defendant is applicable and the commitment charge should not be given over objection by either party.

In response to an objection by appellant's counsel, the trial judge stated his reasons for making the commitment charge:

MR. BRUCK: [W]e except to the charges about what happens to a Defendant after he is acquitted by reason of insanity as being beyond the province of the Jury.

THE COURT: All right, sir. Let me state for the record, and the record will bear out as to why I charged that, because of certain testimony elicited by the Defendant relative to what had happened to him and what would happen to him I thought it necessary to instruct the Jury as to the law on that and the Court is aware of *State v. Valenti* and disagrees with *State v. Valenti* but I don't have the final say-so as to those opinions in any event. But I would also put in the record, Madam Court Reporter, that very specifically in arguments to the Jury, and I made notes on this, when Mr. Delgado stated that "if you think the State Hospital would not confine this man you are deluding yourself. Do you think they would release him? Do you think they will let him back on the street? Do you understand the quandary they are in? That the Defendant is an embarrassment to the State Hospital and you have to understand their predicament, they must wash their hands of this man." And because of testimony and argument such as that I deemed it necessary. I stand on my charge.

The testimony referred to by the trial judge was that of Dr. Karl V. Doskocill, who testified as to the commitment proceedings followed with respect to a defendant found incompetent to stand trial. Dr. Doskocill said nothing about the possibility that a defendant acquitted by reason of insanity would be released from custody, and the trial judge's reliance on this testimony to justify a commitment charge was misplaced.

The portions of appellant's jury argument reproduced in the trial judge's statement do in fact refer to appellant's possible confinement in the State Hospital upon his acquittal by reason of insanity. However, these statements were made only after the trial judge stated he would give a commitment charge to the jury. Appellant made the argument in antici-

pation of this charge and in an attempt to make the best of an unfavorable situation. The trial judge's charge was not prompted and cannot be justified by appellant's arguments to the jury. To the contrary, appellant's arguments were prompted by the trial judge's earlier announced decision to give a commitment charge.

Since nothing in the conduct of this trial was clarified, cured or corrected by the commitment charge, the giving of the charge over appellant's objections was error.

We agree with appellant that the error was sufficiently prejudicial to warrant reversal. At the first trial of this case without the commitment charge a mistrial was declared when the jury could not reach a verdict after seven hours. Here, with the commitment charge, the jury was able to return a guilty verdict after only thirteen minutes. The prejudice to appellant is manifest.

Although the trial judge attempted to disclaim his commitment charge by instructing the jury not to consider it in their deliberations, this disclaimer was not sufficient to remove the prejudice to appellant. If the jury should not have considered the commitment charge it should never have been given.

Accordingly, the judgment below is reversed and the case remanded for a new trial.

Reversed and remanded.

LEWIS, C. J., and RHODES, J., concur.

LITTLEJOHN and NESS, JJ., dissent.

NESS, Justice (dissenting) :

I dissent. The alleged error, if any, in the trial judge's charge was cured by his statement that the disposition and handling of appellant should not enter into the jury's deliberations.

Apart from this curative instruction, the error was harmless. It is well settled that where

". . . the only rational conclusion warranted by the evidence is that the accused is guilty, the judgment should not be set aside because of unsubstantial errors not affecting the result." *State v. Robinson,* 238 S. C. 140, 151, 119 S. E. (2d) 671, 677 (1961).

The evidence against appellant was overwhelming. It is uncontroverted that he committed a vicious murder in the presence of an eye-witness. I have no difficulty in concluding beyond a reasonable doubt that the alleged error did not influence the verdict. See *Dorsey v. State,* 276 Md. 638, 350 A. (2d) 665 (1976).

I would affirm.

LITTLEJOHN, J., concurs.