23864

The STATE, Respondent v. Michael T. POINDEXTER, Appellant.

(431 S.E. (2d) 254)

Supreme Court

*Melvin L. Roberts,* York, *for appellant.*

*Atty. Gen. T. Travis Medlock, Chief Deputy Atty. Gen. Donald J. Zelenka, Asst. Attys. Gen. Harold M. Coombs, Jr.* and *James W. Rion, Jr.,* Columbia, and *Sol. Larry F. Grant,* York, *for respondent.*

Heard Mar. 11, 1993; Decided June 1, 1993.

Reh. Den. June 29, 1993.

HARWELL, Chief Justice:

Michael T. Poindexter (Poindexter) was sentenced to life imprisonment after a jury found him guilty of murder but mentally ill. Poindexter appeals, alleging, among other things, that the trial judge erred in refusing to direct a verdict of not guilty by reason of insanity. We find no error and affirm.

## I. FACTS

On August 29, 1990, Poindexter clocked out of his job and walked to the parking lot along with fellow employees where he shot and killed co-worker Willie King (King) for no apparent reason. Police arrested Poindexter at a relative's home in North Carolina a few hours later. Poindexter subsequently entered a plea of not guilty by reason of insanity.

At trial, both sides presented lay testimony that Poindexter exhibited behavioral changes in the months before King's murder. In addition, Poindexter presented expert testimony that his inability to absorb vitamin B-12 rendered him insane

at the time of King's murder.[1] The jury rejected Poindexter's claim of insanity and found him guilty of murder but mentally ill. Poindexter appealed, challenging several of the trial judge's rulings.

## II. DISCUSSION

The jury had the option, based on its view of the evidence, to find Poindexter not guilty, not guilty by reason of insanity, guilty but mentally ill, or guilty. Poindexter asserts that the jury should have been informed of the consequences of each verdict it could return, either during *voir dire*, opening statement, closing argument, or by special instructions from the trial judge. We disagree.

Poindexter's efforts to educate the jury as to the consequences of the available verdicts conflict with our prior decisions which hold that the consequences of a verdict are of no concern to the jury. *See, e.g., State v. Huiett*, 271 S.C. 205, 246 S.E. (2d) 862 (1978); *State v. Valenti*, 265 S.C. 380, 218 S.E. (2d) 726 (1975). The function of the jury is to determine whether a defendant is guilty or not guilty, and the consequences of a conviction are of no aid in determining whether the defendant committed the offense. Therefore, the consequences need not be brought to the jury's attention unless the jury has a statutory right to fix or recommend punishment. *Huiett*, 271 S.C. at 208, 246 S.E. (2d) at 864; *State v. McGee*, 268 S.C. 618, 235 S.E. (2d) 715 (1977). The jury had no such right in this case. Accordingly, we find that the trial judge did not abuse his discretion in denying Poindexter's requests.[2]

Poindexter next contends that the trial judge erred in re-

---

[1] Poindexter purportedly killed King as a result of a delusion that Jesse Helms spoke to him through the television, informing him that King was the son of Dr. Martin Luther King and was involved in a conspiracy with Jesse Jackson to bring the war in Kuwait to the United States.

[2] Our holding should not be read as precluding questions designed to determine whether a juror is so biased or prejudiced that he could not apply the law as charged. The purpose of *voir dire* is to select a fair and impartial jury. *State v. Jones*, 268 S.C. 227, 233 S.E. (2d) 287 (1977). However, *voir dire* is not to be used as a means of pre-educating or indoctrinating a jury or as a means of impaneling a jury with particular predispositions. *People v. Hundley*, 227 Ill. App. (3d) 1056, 169 Ill. Dec. 399, 591 N.E. (2d) 903 (1992). In our view, the discovery and elimination of biased or prejudiced jurors during *voir dire* does not require that they first be informed of the consequences of each potential verdict.

fusing to direct a verdict of not guilty by reason of insanity or grant a new trial. According to Poindexter, the evidence only supports a conclusion that he was not guilty by reason of insanity. We disagree.

It is an affirmative defense to a prosecution for a crime that, at the time of the commission of the act constituting the offense, the defendant, as a result of mental disease or defect, lacked the capacity to distinguish moral or legal right from moral or legal wrong or to recognize the particular act charged as morally or legally wrong. S.C. Code Ann. § 17-24-10(A) (Supp. 1992). However, a defendant is guilty but mentally ill if, at the time of the commission of the act constituting the offense, he had the capacity to distinguish right from wrong or to recognize his act as being wrong as defined in Section 17-24-10(A), but because of mental disease or defect he lacked sufficient capacity to conform his conduct to the requirements of the law. S.C. Code Ann. § 17-24-20(A) (Supp. 1992).

Where there is any evidence tending to prove the guilt of the accused, or from which his guilt may be fairly and logically deduced, the refusal to direct a verdict or grant a new trial is not error. *State v. Davis*, 278 S.C. 544, 298 S.E. (2d) 778 (1983). Neither party to this appeal disputes that Poindexter had a mental defect when he killed King. Therefore, the question whether the trial judge erred in denying Poindexter's motions for a directed verdict and a new trial turns on whether there was any evidence from which a jury could find that Poindexter had the capacity to distinguish right from wrong or to recognize his act as morally or legally wrong.

The State presented lay testimony showing that Poindexter fled to North Carolina after murdering King. Less than seven hours later, Poindexter appeared normal and was cooperative during his arrest. Moreover, in the months preceding King's murder, co-workers noticed only that Poindexter became quieter and more reclusive and that his work quality decreased. One co-worker testified that Poindexter stated that he had joined a church and objected to the use of pornographic magazines and profanity in the workplace.

Although there is strong evidence to support Poindexter's claim of insanity, we find that there is evidence in the record from which the jury could have deduced that Poindexter had the capacity to understand that it was morally or legally wrong to murder King. The jury was free to rely on circumstantial evidence to find Poindexter sane even though expert testimony favored a finding that he was insane. *State v. Smith*, 298 S.C. 205, 379 S.E. (2d) 287 (1989); *State v. Milian-Hernandez*, 287 S.C. 183, 336 S.E. (2d) 476 (1985). Accordingly, it was not error for the trial judge to refuse Poindexter's motions for a directed verdict and new trial.

For the foregoing reasons, Poindexter's conviction is

Affirmed.

CHANDLER, FINNEY, TOAL and MOORE, JJ., concur.